IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

APR 1 4 2004

Michael N. Milby, Clerk

| | |
|---|---|
| USA FOOTBALL, INC., a Virginia corporation, and the NATIONAL FOOTBALL LEAGUE, an unincorporated association,<br><br>    Plaintiffs,<br><br>v.<br><br>TIMOTHY B. ROBINSON d/b/a USA FOOTBALL, INC., and USA FOOTBALL, INC., a Texas corporation,<br><br>    Defendants. | CIVIL ACTION NO. H-03-4858 (NFA) |

## FIRST AMENDED DECLARATORY JUDGMENT COMPLAINT

Plaintiff USA Football, Inc. ("USA Football") is an organization, which by supporting other non-profit entities, promotes the sport of amateur football at the high school and youth level. USA Football, along with plaintiff the National Football League ("NFL") (which has earmarked significant funds for USA Football's endeavors), seeks a declaratory judgment that its charitable efforts do not infringe, dilute, or otherwise violate in any way the rights (if any) of defendants Timothy B. Robinson d/b/a USA Football, Inc. ("Mr. Robinson") and USA Football, Inc. ("Defendant USA Football") (collectively, "Robinson"). Robinson claims to have used the term USA FOOTBALL since 1993 to organize a football team composed of former players from colleges in the United States of America that has played a limited number of exhibition games against international competitors, primarily abroad. Despite the differences between the activities of USA Football and Robinson, and despite Robinson's descriptive and *de minimus* use of the term USA FOOTBALL, Robinson has threatened to file a trademark lawsuit to enjoin

25405080.1

34

USA Football's activities unless paid tens of millions of dollars. Accordingly, in support of their Complaint, USA Football and the NFL allege as follows:

### Nature of the Action

1. This is an action for a declaration of rights under the Trademark Act of 1946, as amended ("Lanham Act"), 15 U.S.C. § 1051 et seq. and under the common law of the State of Texas.

### Jurisdiction and Venue

2. An actual controversy exists within this Court's jurisdiction among the parties concerning these rights. This Court is authorized to declare the rights of the parties pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202 and the Texas Declaratory Judgments Act, Ch. 37, TEX. CIV. PRAC. & REM. CODE.

3. This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and the jurisdictional provisions of Title 28 of the United States Code, 28 U.S.C. §§ 1331, 1338, 1367, and principles of supplemental jurisdiction.

4. The matter in controversy exceeds the sum or value of $75,000 exclusive of interest or costs, and is between citizens of different states. Therefore, this Court also has jurisdiction pursuant to 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Mr. Robinson because he resides and transacts business within this State and District.

6. This Court has personal jurisdiction over Defendant USA Football because it claims to be a newly reinstated Texas corporation with its principal place of business at 1324 North Richmond Road, Wharton, Texas 77488.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to these claims occurred, and a substantial part of property that is the subject of the action is situated, in this District.

### The Parties

8. Mr. Robinson claims to operate a corporation called USA Football, Inc., organized and existing under the laws of the State of Texas, having been incorporated on November 3, 1997, with a principal place of business at 1327 East Washington Street, Number 272, Harlingen, Texas 78550. Mr. Robinson claims to reside at 1113 East Bowie Avenue, Harlingen, Texas 78550.

9. Defendant USA Football, the corporation purportedly operated by Robinson, in fact ceased to exist on February 11, 2000, when its charter was revoked for failure to pay the required taxes. Exhibit A. Upon information and belief, on November 10, 2003, shortly after this action originally was filed, Mr. Robinson attempted to reinstate Defendant USA Football. Upon further information and belief, the newly reinstated corporation claims its principal place of business as 1324 North Richmond Road, Wharton, Texas 77488. Exhibit B. It is unclear at this point whether Defendant USA Football is, in fact, a bona fide corporate entity or whether it has paid the necessary taxes.

10. Plaintiff USA Football is a corporation organized and existing, since December 2002, under the laws of the State of Virginia, having a principal place of business at 8300 Boone Boulevard, Suite 870, Vienna, Virginia 22182. USA Football has filed for tax-exempt status under Section 501(c)(3) of the Internal Revenue Code. Using the name USA Football and a distinctive logo, USA Football promotes the sport of youth and amateur football within the United States. Exhibit C.

11. The NFL is an unincorporated association with its principal place of business at 280 Park Avenue, New York, New York 10017. The NFL is in the business of organizing and arranging for professional football games among its 32 member clubs. The NFL conducts business in this District, in Houston, Texas, in a variety of ways, including holding meetings here and by regularly arranging for football games and the telecast of games originating from Houston involving the Houston Texans and other Member Clubs.

### Facts Common To All Claims

12. USA Football was created in December 2002, for the purpose of promoting the sport of amateur football in the United States.

13. Working in partnership with other non-profit organizations, such as (a) American Youth Football, (b) the YMCA, (c) the Boys and Girls Clubs of America, (d) the National Federation of State High School Associations, (e) the Pop Warner Football League and (f) various other groups, USA Football supports local, regional and national youth football programs nationwide in order to enhance a broad appreciation of the game, excellence in coaching, high levels of youth participation, and player health and safety.

14. To assist USA Football in its initial stages, the NFL, along with the NFL Players Association, made a charitable contribution out of their NFL Youth Football Fund (a foundation created by the NFL and the NFL Players Association to provide support for organizations involved in youth and high school football). In the past, NFL Youth Football has made similar charitable contributions to a variety of such organizations. The NFL, however, does not have any ownership interest in the activities of USA Football, nor does it make any trademark use of the mark USA FOOTBALL.

15. In addition, because USA Football had no staff support or other facilities in late 2002, the NFL, through NFL Properties LLC, helped USA Football to adopt an appropriate name

to identify itself. This involved conducting a variety of searches to determine whether any other entity had exclusive rights to the mark USA FOOTBALL and filing a trademark application on USA Football's behalf.

16. These searches revealed a number of third party uses incorporating the terms "USA" and "Football," including other uses of "USA Football". In addition, other entities have, from time to time, used "USA Football, Inc." as a corporate name. More importantly, research disclosed that Mr. Robinson was not the first to use the term "USA" to identify a football team from the United States that plays against international competition.

17. Simply put, all of this information confirmed that the geographic designation "USA," coupled with the generic term "football," could not form the basis for trademark rights when used to identify a football team comprised of players from the United States. Accordingly, USA Football chose USA FOOTBALL as its name and created the following distinctive, patriotic logo to distinguish itself:



18. Significantly, despite the research that preceded adoption of USA FOOTBALL as a mark, Robinson's purported use of USA Football never appeared. In fact, it was not until USA Football issued a press release, announcing its formation on December 5, 2002, that Robinson first came to USA Football's attention when Mr. Robinson sent an email to the NFL.

19. Subsequently, on December 19, 2002, an attorney representing Mr. Robinson wrote a letter expressing an interest in a cooperative relationship under which "Robinson's organization" could participate in USA Football's activities. Exhibit D.

20. On December 24, 2002, the NFL responded, requesting more information on Robinson to help "determine whether ... his organization" might be included within USA Football's plans to promote the sport. Exhibit E.

21. No response letter was received. Accordingly, the NFL reached out again, by letter of February 10, 2003, requesting the same information. Exhibit F.

22. No response letter was received. Accordingly, the NFL called Mr. Robinson's counsel on March 4, 2003, seeking the same information.

23. The March 4, 2002 telephone call also was ignored. Accordingly, the NFL wrote again, on March 21, 2003, expressing the view that the failure to provide any of the information requested must mean Robinson was "no longer interested in exploring mutually beneficial projects with ... USA Football." It expressly stated that because it had received no response since December, it now regarded the matter as closed. Exhibit G.

24. Again, no response to that letter was ever received. About four months later, however, and about six months from when he first contacted the NFL, Mr. Robinson sent an e-mail to the NFL. Although it still did not contain any of the information requested or indicate any interest in working with USA Football, it demanded that USA Football "desist at once" from its activities. Exhibit H.

25. At that point, USA Football, which, having heard nothing from Mr. Robinson or his counsel since the end of 2002 (nor from anyone else about Mr. Robinson's purported activities), had proceeded to secure office space, letterhead, a small staff, and a website address. Accordingly, it responded directly to Mr. Robinson, by letter dated July 24, 2003. That letter pointed out that Robinson had ignored all of the NFL's requests for information since December

2002. Nonetheless, it re-extended an "invitation . . . to provide more information" about his activities. Exhibit I.

26. Mr. Robinson did not provide that information. Instead, a new lawyer representing him spoke with USA Football on July 31, 2003, and requested copies of all of the prior correspondence between the parties. That was provided immediately and, on August 8, 2003, USA Football again offered to explore opportunities to cooperate with Robinson's efforts to organize exhibition football games between U.S. and international teams. Exhibit J.

27. Finally, on October 23, 2003, ten months after first contacting USA Football, Mr. Robinson provided specific information about his purported use of the term USA FOOTBALL. This information simply showed that Robinson's only use has been in connection with fielding a football team from the United States that has played in international competitions, approximately three times a year over the last decade, primarily outside of the United States.

28. Unfortunately, with that information came a steep price tag. It was accompanied by a letter from Mr. Robinson's new lawyer stating that he would file a trademark infringement action against USA Football and the NFL on October 30, 2003 unless, on or before that date, the NFL agreed to pay Mr. Robinson's defunct corporation $20,000,000.00 and a 5% royalty based on future NFL merchandise sales and broadcast fees. The ultimatum set forth in this letter gave USA Football and the NFL less than seven days to consider the matter. That demand has never been withdrawn or modified in any way.

29. As a result of Mr. Robinson's extortionate demand and threat to file a trademark infringement action, USA Football and the NFL have a reasonable apprehension of litigation and a cloud has been placed over USA Football's ability to continue to identify itself and conduct its charitable activities and the NFL's ability to support those activities.

30. Mr. Robinson's allegations regarding USA Football's activities created a adversarial conflict and a case of actual controversy among the parties.

31. So that USA Football may continue to identify itself in connection with it charitable activities and so that the NFL can, without fear of unjustified claims, continue it efforts to assist in those activities, USA Football and the NFL desire promptly to resolve thi controversy and establish that they are not violating any trademark or other rights owned b Robinson.

32. As is clear from the foregoing, (a) the term USA FOOTBALL has not bee previously used as a valid trademark by Robinson; (b) USA Football's use of its USA FOOTBALL mark is unique and not likely to be confused with or dilute any amateur team o USA football players fielded by Robinson (or anyone else); (c) Robinson's prior activities unde that mark have been so *de minimus* and circumscribed as to preclude any trade recognition in th term; and (d) from February 11, 2000 until November 10, 2003, Defendant USA Football wa not a valid corporate entity and, on information and belief, Robinson, as a result of incurrin significant unpaid debts both domestically and abroad and otherwise, never established an goodwill in any going concern under the name USA FOOTBALL.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT

33. USA Football and the NFL repeat and reallege each and every allegation o Paragraphs 1 to 32 of this Complaint as if set forth herein.

34. A justiciable and actual controversy exists before this Court with respect whether USA Football's use of the mark USA FOOTBALL will infringe trademark rights any, claimed by Robinson under 15 U.S.C. § 1125(a) and Texas common law.

35. USA Football's use of the mark USA FOOTBALL is unlikely to cause confusion with respect to any of Robinson's activities.

36. Thus, USA Football's use of USA FOOTBALL does not infringe any rights of Robinson under 15 U.S.C. § 1125(a) and Texas common law.

37. USA Football and the NFL therefore request a declaration from the Court that the use by USA Football of the mark USA FOOTBALL does not infringe any trademark rights of Robinson under 15 U.S.C. § 1125(a) and Texas common law.

## COUNT II
## DECLARATION OF NO TRADEMARK DILUTION

38. USA Football and the NFL repeat and reallege each and every allegation of Paragraphs 1 to 37 of this Complaint as if set forth herein.

39. A justiciable and actual controversy exists before this Court with respect to whether USA Football's use of the mark USA FOOTBALL will dilute trademark rights, if any, claimed by Robinson under 15 U.S.C. § 1125(c) and Tex. Bus. and Com. Code § 16.29.

40. Robinson's alleged trademark lacks the requisite fame to constitute a "famous mark" under 15 U.S.C. § 1125(c) and Tex. Bus. and Com. Code § 16.29.

41. USA Football's use of the mark USA FOOTBALL is unlikely to dilute any use by Robinson of the term USA FOOTBALL.

42. Thus, USA Football's use of the mark USA FOOTBALL does not constitute dilution under 15 U.S.C. § 1125(c) and Tex. Bus. and Com. Code § 16.29.

43. USA Football and the NFL therefore request a declaration from the Court that the use by USA Football of the mark USA FOOTBALL does not dilute any trademark rights of Robinson under 15 U.S.C. § 1125(c) and Tex. Bus. and Com. Code § 16.29.

9

## COUNT III
## DECLARATION OF NO FALSE DESIGNATION OF ORIGIN

44. USA Football and the NFL repeat and reallege each and every allegation of Paragraphs 1 to 43 of this Complaint as if set forth herein.

45. A justiciable and actual controversy exists before this Court with respect to whether USA Football's use of the mark USA FOOTBALL constitutes false designation or origin with respect to any trademark rights claimed by Robinson under 15 U.S.C. § 1125(a).

46. ==There are no protectable trademark rights in Robinson's purported use of USA Football because that alleged use lacks the requisite secondary meaning.==

47. USA Football's use of the mark USA FOOTBALL is unlikely to cause confusion with respect to any of Robinson's activities.

48. Thus, USA Football's use of USA FOOTBALL does not constitute false designation or origin under 15 U.S.C. § 1125(a).

49. USA Football and the NFL therefore request a declaration from the Court that the use by USA Football of the mark USA FOOTBALL does not constitute false designation of origin under 15 U.S.C. § 1125(a).

## COUNT IV
## DECLARATION OF NO UNFAIR COMPETITION UNDER COMMON LAW

50. USA Football and the NFL repeat and reallege each and every allegation of Paragraphs 1 to 49 of this Complaint as if set forth herein.

51. A justiciable and actual controversy exists before this Court with respect to whether USA Football's use of the mark USA FOOTBALL constitutes unfair competition und Texas common law.

52. USA Football's use of the mark USA FOOTBALL does not constitute un competition under Texas common law.

53. USA Football and the NFL therefore request a declaration from the Court that the use by USA Football of the mark USA FOOTBALL does not constitute unfair competition under Texas common law.

**PRAYER FOR RELIEF**

WHEREFORE, USA Football and the NFL respectfully request that the Court enter

A. For a judgment that the trademark USA FOOTBALL does not:

(1) Dilute any rights of Robinson under 15 U.S.C. § 1125(a) and Texas common law;

(2) Constitute false designation of origin under 15 U.S.C. § 1125(a); and BUS. AND COM. CODE § 16.29;

(3) Constitute unfair competition under Texas common law.

(4) For a judgment that Robinson cannot register, at either the federal or state level the mark USA FOOTBALL;

B. For a judgment that USA Football and the NFL recover the costs of this action

C. reasonable attorneys fees and such other relief as the Court may deem appropriate.

11

25405080.1

Dated: April 14, 2004

Respectfully submitted,

*/s/ M. Delflache*

Marc L. Delflache
Attorney-In-Charge
State Bar No. 05725650
Fed. ID No. 540
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Tel: 713.651.5278
Fax: 713.651.5246

Of Counsel:

Doak C. Procter, IV
State Bar No. 24025599
Fed. ID No. 26338
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Tel: 713.651.5278
Fax: 713.651.5246

Bruce P. Keller
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, NY 10022
Tel: 212.909.6000
Fax: 212.909.6836

**Attorneys for Plaintiffs
USA Football, Inc., and the National Football League**