IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| USA FOOTBALL, INC., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-00516-ALM |
| FFWCT, LLC, USA FLAG, LLC, and TRAVIS BURNETT, | § § § § | |
| *Defendants.* | § | |

**FFWCT, LLC'S, USA FLAG, LLC'S, AND TRAVIS BURNETT'S SUR-REPLY TO USA FOOTBALL, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules CV-7 and CV-56 of the Local Rules of the Eastern District of Texas, FFWCT, LLC, USA Flag, LLC, and Travis Burnett (collectively, "Flag"), the Defendants in Civil Action No. 4:23-cv-00516-ALM, respectfully request that the Court deny USA Football, Inc.'s ("FB") motion summary judgment (the "Motion").

I.  **TRADEMARK INFRINGEMENT SHOULD NOT BE DECIDED ON SUMMARY JUDGMENT.**

It is worth repeating that "[l]ikelihood of confusion is a question of fact …." *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Cir. 2012) (citations omitted); *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, 668 F. Supp. 3d 614, 648 (E.D. Tex. 2023-ALM). FB does not and cannot challenge this statement of the law.

"Credibility questions are to be resolved by the fact finders." *Mary S. Krech Tr. v. Lakes Apartments*, 642 F.2d 98, 103 (5th Cir. 1981); *Mays v. Chevron Pipe Line Co.*, 968 F.3d 442, 447 (5th Cir. 2020), as revised (Aug. 4, 2020) ("[T]he court may not make credibility determinations

or weigh the evidence, as those are jury functions." (omitting citations)); *United States v. Jordan*, 364 F. Supp. 3d 665, 667 (E.D. Tex. 2019 - ALM) ("… the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.'" (quoting *United States v. Skelton*, 514 F.3d 433, 442 (5th Cir. 2008), quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984))); *Al-habash v. Raytheon* Co., No. 4:15-CV-450, 2016 WL 6155601, at *11 (E.D. Tex. Oct. 24, 2016- ALM) ("A fact finder is needed to make credibility determinations regarding the evidence submitted." citing *Fitzpatrick v. Pontotoc Cty., Miss.*, 612 Fed.Appx. 770, 776 (5th Cir. 2015) ("[A]ssessments of credibility are not appropriately drawn by the court at the summary judgment stage.")).

Credibility analysis also applies equally to experts and their opinions. *Kim v. Am. Honda Motor Co., Inc.*, No. 4:19-CV-00332, 2022 WL 1604773, at *2 (E.D. Tex. May 19, 2022 - ALM), aff'd, 86 F.4th 150 (5th Cir. 2023) (Denying motion to exclude plaintiff's expert on crashworthiness noting, among other things, that "the jury is the finder of fact that will determine the weight and credibility, if any, to assign to [the expert's] opinion.).

As shown in Flag's Response and this Sur-Reply, the Motion reads like an application for preliminary injunction,[1] asking the Court to disregard the clear authority that a jury is to determine the credibility and weight the evidence is to be given and do so itself., which it is not. The Court should summarily deny the Motion.

---

[1] *See e.g.*, "This factor favors [FB] favor." [*Id.*, p. 21]; "This factor, too, falls in [FB's] favor." [*Id.*, p. 23]; "Accordingly, this factor favors [FB]." [*Id.*]; "This factor favors [FB]." [*Id.*, p. 24]; "This factor therefore weights [sic] strongly in USA Football's favor." [*Id.*]; "Accordingly, this factor weighs in favor of likelihood of confusion." [*Id.*, p. 27]; "The foregoing factors overwhelmingly weigh in … [FB's] favor." [*Id.*]

**FFWCT, LLC'S, USA FLAG, LLC'S, AND TRAVIS BURNETT'S SUR-REPLY
TO USA FOOTBALL, INC.'S MOTION FOR SUMMARY JUDGMENT – Page 2**

## II.     THE EVIDENCE RAISES FACT QUESTIONS.

### A.     FB's Alleged Evidence Should be Weighed by and the Purported Declarant's Credibility Judged by the Jury. [2]

The Fifth Circuit has "'rejected anecdotal evidence of actual confusion when the proponent did not show that a misleading representation by the defendant, as opposed to some other source, caused a likelihood of confusion." *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, No. 23-50413, 2024 WL 3076385, at *9 (5th Cir. June 21, 2024). And, "[e]vidence of actual confusion must show more than a fleeting mix-up of names; rather it must show that the confusion was caused by the trademarks employed and it swayed consumer purchases.'" *Id.*, quoting *Streamline*, 851 F.3d at 457.

There are numerous credibility issues with Exhibits 2A-B, 2G, and 2J-O [Dkts. 62-3-4, 9, and 12-18] and Exhibits 22 and 25 [Dkts. 62-47, 50], the declarants in each, and the statements upon which FB relies. FB has also not provided any evidence proving the basis for the alleged confusion that the exhibits purport to reflect. In any event, the credibility and weight to be given to declarants and their statements are for the jury to determine.

| | |
|---|---|
| 2A | This exhibit does not clearly reflect that the declarant knew anything about Flag, that their use of "@usaflagfb" was not merely a fleeting mix-up of names or a shorthand reference to FB's own flag football tournament. Neither the exhibit nor FB identifies anything about the purported speaker beyond the handle "@hometeamlive"[3] nor any relationship between the declarant and FB. Thus, the exhibit is hearsay and lacks foundation. If admissible, a jury should judge its weight, if any, and its and its speaker's credibility. |
| 2B | This exhibit also does not show why the declarant used FB's email address. It does not show where the declarant obtained the address nor exclude the possibility that it auto-populated and was a "fleeting mix-up." There is also no indication of the relationship between the declarant and FB. Again, the exhibit is hearsay and lacks foundation. If admissible, a jury should judge its weight and its and the declarant's credibility. |
| 2G | This exhibit is, initially, an email between two FB employees. Its subject line is hearsay. It is not clear from the apparent text message attached to it who the two declarants are, |

---

[2] Flag withdraws its objections to Exhibits H and I as they were inadvertently included in the Response.
[3] Counsel for Flag could not locate this purported post in a search on hometeamlive's Instagram account.

**FFWCT, LLC'S, USA FLAG, LLC'S, AND TRAVIS BURNETT'S SUR-REPLY
TO USA FOOTBALL, INC.'S MOTION FOR SUMMARY JUDGMENT – Page 3**

|     | |
| --- | --- |
|     | though the responding declarant appears to be Ms. Brothers, an employee of FB. Her statements in the text are hearsay. Despite it being apparent that Ms. Brothers knows the sending declarant ("I'm good also" at the top of the text), neither the exhibit nor any other evidence reveals the relationship between them and whether this is not merely a setup. In fact, FB failed to obtain and produce the remainder of this particular series of texts or any other texts between these individuals that may impact the credibility of the sending declarant and their own credibility. Further, the original declarant states that they know Flag and FB are different entities, which cuts against FB's entire position, particularly when construed in a light most favorable to the non-moving party, Flag. If admissible, a jury should judge the original declarant's and their statements' credibility and determine the weight to be given to them, if any. |
| 2J  | The email at the top of this exhibit is to and from representatives of FB and is hearsay. This exhibit also does not show why the declarant used FB's email address, nor does it or any other evidence show that there is no relationship between the declarant and FB that may impact the declarant's and this exhibit's credibility. If admissible, a jury should judge its weight and its and the declarant's credibility. |
| 2K  | The email at the top of this exhibit is to and from representatives of FB and is hearsay. It is apparent from the face of the bottom email that the declarant is referencing FB's tournaments, not Flag's. They first use only "USA" to refer to FB's lowercase "t" "tourneys." They then again use only "USA" to reference FB's lowercase "f" flag lowercase "c" coaching and camps. This exhibit does identify, in part, that the declarant has a relationship with FB and its employees. A jury should judge that relationship to determine the declarant's and this exhibit's credibility. |
| 2L  | Like Exhibit 2K, it is apparent that the declarant knows "Britt," presumably being Brittney Brothers, an FB employee. As such, it is at least arguable that he knows that she works for FB, not Flag. It becomes more evident that he understands the distinction between FB and Flag by using "USA" and capital "F" Football" together and then a lowercase "f" flag. This is not evidence of confusion at all. If it were, though, the jury should still be allowed to consider the relationship between the declarant and Ms. Brothers and assess the declarant's and this exhibit's credibility. |
| 2M  | This exhibit consists of two emails purporting to be from the NFL's "Producer, Content Marketing & Integration," Lauren Nitto, and sent during the pendency of this lawsuit. FB has a long and interconnected history with the NFL (FB was started through endowments from the NFL and the NFL Players Association – Dkt. 62, p. 2, ¶ III.A.; the NFL has a representative on FB's Board of Directors (or the Executive Committee of that Board) Dkt. 62-1 [Hallenbeck Dep.], 26:17 - 27:17; FB has secured partnerships with the NFL/NFL Flag – 62-2 [Riley Dec.], ¶ 11; the NFL Foundation is a "strategic partner" of FB – Dkt. 1 ['516 Lawsuit], ¶ 9; FB is a grantee of the NFL Foundation – Dkt. 62-1, [Hallenbeck Dep.], 111:7-14; and the NFL has been a co-plaintiff with FB in trademark litigation – Dkt. 75-16). This long-standing interconnection relationship raises questions about Ms. Nitto's credibility and claimed confusion. FB's attempted use of this exhibit to show actual confusion is disingenuous. |
| 2N  | This exhibit is not clear enough to discern whose Instagram account it is posted on, |

| | |
|---|---|
| | though FB claims it is from @ashleaklam32's account.[4] FB has not provided any evidence of who this person is, though a search of Instagram for that handle reflects that their name is Ashlea Klam who purports to be on the Women's National Team for @usnft,[5] which FB states is "related" to FB. Dkt. 62, p. 12, 4th bullet point. It is doubtful that they are confused about Flag v. FB given this relationship. This is further evidenced by using "USA" with a lowercase "f" flag with a picture of several individuals who are probably FB's coaches and players. FB's attempted use of this exhibit as evidence of actual confusion is also disingenuous and the exhibit contains inadmissible hearsay anyways. |
| 2O | It is apparent, in context, that the responding declarant is an employee of FB, and their statement is hearsay. There is no indication that the declarants are not close friends or have any other relationship which would be valuable to a jury determining its credibility. The lack of any date on the exhibit also compounds its lack of reliability. |
| 2Q | This exhibit is not completely legible and should be ignored on that basis alone. It does appear that the second email is from someone with a @usafootball email address and is, therefore, hearsay. Further, the statement FB attempts to rely on claims that the declarant got "the wrong impression that [Flag is] the official federation of the USA." That is not evidence that they were confused as to the trademarks at issue, just that they incorrectly believed that there is one "official federation of the USA," which there is not – not even FB. It is also not clear why the declarant makes the statement upon which FB relies, which reflects a lack of foundation for the exhibit and its contents. The statement is out of context for the interaction portrayed in the exhibit. Its credibility is questionable. And like the other exhibits, FB has provided no evidence that there is no relationship between it and the declarant. In light of FB's attempted use of, among others, Exhibits 2M and 2N, it should be incumbent on FB to show that there is no relationship. |
| Ex. 22 | The last page of this exhibit purports to be an attachment to a string of emails between an employee of Nike and an employee of FB. Nothing in this string, however, indicates that there is an attachment. Nor is there any indication that that page was a topic of discussion. It is not apparent that the last page belongs to the string of emails (which also does not reflect any confusion by Nike). FB also did not attach to the Motion the testimony of Charles Davis it references for this exhibit. The last page of this exhibit should be disregarded altogether. |
| Ex. 25 | All but the last email in this exhibit are communications between employees of FB and are hearsay. Like Exhibit 2M, the last email is from one of FB's very sophisticated partners, Nike - 62-2 [Riley Dec.], ¶ 11. That relationship impacts the declarant's and their statement's credibility. The last email also reflects that there was a prior email between the declarant and Ms. Brothers which might provide context or clarification. FB has not produced or offered that email. The statement FB attempts to rely on is no more than a question about whether there is a relationship between FB and Flag. |

---

[4]  Counsel for Flag could not locate this purported post in a search on @ashleaklam32's Instagram account.
[5]  Flag requests that the Court take Judicial Notice of Ms. Klam's Instagram page at https://www.instagram.com/ashleaklam32/ and its statements about her relationship to USNFT's Women's National Team. FED. R. EVID. 201.

**FFWCT, LLC'S, USA FLAG, LLC'S, AND TRAVIS BURNETT'S SUR-REPLY TO USA FOOTBALL, INC.'S MOTION FOR SUMMARY JUDGMENT – Page 5**

### B. The Motion Asks the Court to Weigh, and Weigh in FB's Favor, the Testimony of Multiple Lay Witnesses and Numerous Exhibits.

The Motion heaps upon the Court the deposition of Scott Hallenbeck [Dkt. 62-1], FB's CEO and Executive Director; the Deposition [Dkt. 62-23] and the Declaration of Jamie Riley [Dkt. 62-2], an officer of FB; the Deposition of Kimberly Fields [Dkt. 62-22], a Senior Vice President of FB's long-time partner, the NFL; and the Deposition of Izell Reese [Dkt. 62-41], the Director of the NFL's flag program. Mr. Hallenbeck and Ms. Riley are compensated by FB and have a direct interest in the outcome of this lawsuit. As a senior executive of the NFL, Ms. Fields has an interest in not upsetting its long-time partner FB, particularly in connection with the Olympic aspirations of the NFL in connection with flag football. *See* Dkt. 73-10 at 72:20-73:6. Mr. Reese, through his company, is intimately tied to the NFL and it's flag program. As shown, the FB and NFL have a long history of strong ties and partnerships.

None of these witnesses are disinterested. Yet, FB asked the Court to not only weigh the testimony but weigh it exclusively in FB's favor even though FB is the moving party. *Cadena v. El Paso County*, 946 F. 3d 717, 723 (5th Cir. 2020) ("Courts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). FB even asks the Court to take the credibility of Charles Davis away from the jury. The case authority is clear that the Court should not do this for any of these witnesses. *See* Section I, *supra*.

FB also asks the Court to determine the credibility and weight of each of at least forty other exhibits to the Motion. While Flag created half or it is a party to them, how they should be construed and weighed considering the other evidence is also the province of the jury. *Id*.

### C. There are Credibility Issues with Dr. Botner and His Report.

The way Botner compiled and organized the "confusion" data raises substantial questions

about the credibility (and reliability) of his opinions. Dkt. 75 p. 23-27. *See*, *Koenig v. Beekmans*, No. 515CV00822RCLRBF, 2017 WL 6033404, at *4 (W.D. Tex. Dec. 5, 2017) (Stating, in denying a motion to exclude expert" that "complaints about assumptions underlying [the expert's] calculations go to the weight of his testimony, rather than its admissibility."). The survey's methodology, which incorrectly categorizes responses based on the term "USA" and includes generalized confusion (i.e., noise) as evidence of confusion, undermines the reliability of the findings. These methodological flaws and the resulting unreliable data present clear fact and credibility issues that are inappropriate for resolution at the summary judgment stage.

In its Reply, FB misstates Flag's main critiques. First, Flag raises issues not with Botner's separate questions to measure both source and affiliation but rather with how those questions were phrased. Questions 1 and 4 asked if any of the four websites were from the same source or affiliated. Dkt. 62-51 ¶ 64, Table A & ¶ 68, Table C. Questions 2 and 5 then allowed respondents to select up to all four. Dkt. 62-51 ¶ 66, Table B; ¶ 70-72, Table D. Forty-seven of 109 respondents were confused by not only Flag and FB, but also Flag, FB, and one or two other entities. Dkt. 75-22. This reflects significant general confusion (i.e., noise) amongst the respondents and raises questions regarding the reliability of the data. And the fact that Botner unashamedly used such data calls his credibility into question.

Second, Flag raises issues with the reasons *why* the respondents answered the way they did. See Dkt. 75-23-25. FB argues that the importance of *why* should be discounted, but *why* is important because it reflects whether the respondent was confused based on the mark or some other unrelated issue (or for no reason at all). In fact, Botner found the *why* questions (Questions 3 and 6) very important because he removed a significant number of respondents from his data set

because of their *why* answers.[6] The jury should be permitted to review this survey data, particularly these *why* answers, and determine for themselves the reliability of the survey results and credibility of the expert and his survey design.

Finally, FB claims that doing some other calculation with the control group resulted in a yield of nearly 20% -- but it provides no supporting numbers or methods to support this calculation. Without this information, FB fails to meet its burden on summary judgment and it is impossible for Flag to respond to this new number.

Botner's flawed survey method creates the significant reduction in confusion rates when excluding improper responses, which creates genuine disputes that preclude summary judgment.

### III. INDIANA'S CONVERSION STATUTE.[7]

"Criminal conversion occurs when '[a] person ... knowingly or intentionally exerts unauthorized control over property of another person.'" Dillinger, LLC v. Elec. Arts Inc., 795 F. Supp. 2d 829, 839 (S.D. Ind. 2011), quoting IND. CODE § 35–43–4–3(a). FB has not shown that Flag has exerted "control" over the USA FOOTBALL mark. Not only is Flag not using or exercising control over FB's USA FOOTBALL mark, but the USPTO issued a trademark registration to Flag for USA FLAG. [Dkt. 75-9]. Thus, the Court should deny the Motion on this point as well.

Like the purported liability of Mr. Burnett, a finding in favor of FB on its Indiana Conversion Statute claim depends on a determination by the Court that there are no questions of material fact as to whether there is a likelihood of confusion. FB has not met its summary judgment burden on this issue. There are many genuine questions of material fact on that issue that warrant

---

[6] *See* Dkt. 62-51 ¶ 75-76, Table F. Botner excluded respondents that answered for "football related" reasons; respondents that stated, "I don't know;" and respondents that answered for other reasons than those he identified as "Company name" or "Similar appearance or design."
[7] Flag disputes that the Court has subject matter jurisdiction over this cause of action.

denial of summary judgment.

## IV.   **PRAYER**.

Each of FFWCT, LLC, USA Flag, LLC, and Travis Burnett respectfully request that the Court deny USA Football, Inc.'s Motion for Summary Judgment in its entirety and grant them such other and further relief to which they are entitled.

Respectfully submitted,

/s/ *Bryan Haynes*

**Bryan Haynes**
Texas Bar No. 09283520
Bryan.Haynes@solidcounsel.com
**SCHEEF & STONE, L.L.P.**
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 649-29511 Telephone
(214) 472-2150 Fax

**Mark D. Nielsen**
Texas Bar No. 24062361
Mark.Nielsen@solidcounsel.com
**SCHEEF & STONE, L.L.P.**
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Fax

**Michael C. Smith**
Texas Bar No. 18650410
Michael.Smith@solidcounsel.com
**SCHEEF & STONE, L.L.P.**
113 East Austin Street
Marshall, Texas 75670
(903) 938-8900 Telephone

**ATTORNEYS FOR PLAINTIFFS FFWCT, LLC, USA FLAG, LLC, AND TRAVIS BURNETT**

## CERTIFICATE OF SERVICE

      I certify that on July 5, 2024, a true and correct copy of the foregoing was electronically filed with the Court using the ECF system, which will send a notification of the filing via electronic mail to all counsel of record.

/s/ *Bryan Haynes*
Bryan Haynes