# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FFWCT, LLC; USA FLAG, LLC; and TRAVIS BURNETT, | § § § | |
| *Plaintiffs,* | § | Civil Action No. 4:23-cv-465 |
| v. | § § | Judge Mazzant LEAD |
| USA FOOTBALL, INC., | § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is USA Football Inc.'s Motion for Summary Judgment (Dkt. #62). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is an intellectual property dispute. At the center of this case are trademarks belonging to USA Football that it uses in conjunction with football-related services and events. USA Football contends that, in 2022, FFWCT, LLC, USA Flag, LLC, and Travis Burnett began using a USA FLAG mark in conjunction with services that are confusingly similar to those offered by USA Football. Complaint, *USA Football v. FFWCT, LLC et al.*, No. 4:23-cv-516, (E.D. Tex. Feb. 13,

2023), ECF No. 1 at ¶ 33.[1] In short, USA Football claims that the USA FLAG marks create confusion in the marketplace given their similarity to the USA Football marks. Therefore, USA Football seeks redress for that confusion.

First, some background on the parties. USA Football is a non-profit corporation "endowed by the National Football League ("NFL") and the NFL Players Association ("NFLPA")" (Dkt. #62 at p. 2). USA Football sanctions flag football events, fields tackle and flag football United States National Teams for international competitions, and "operates events across all disciplines of American football" (Dkt. #62 at p. 3). FFWCT is a Texas limited liability company that also runs flag football tournaments (Dkt. #1 at ¶ 8). On October 8, 2019, FFWCT filed an assumed name certificate for USA Flag (Dkt. #62 at pp. 3–4). FFWCT operates the "business side" of the company, while USA Flag functions as the public-facing brand (Dkt. #62 at p. 4). Travis Burnett ("Burnett") is an individual who was involved in founding FFWCT and USA Flag and retains an ownership interest in both (Dkt. #62 at p. 4).

USA Football and FFWCT first took the field in 2017, when Burnett and his business partner, Charles Davis, proposed a joint operation between USA Football and Flag Football World Championship Tour LLC (Dkt. #62 at p. 6).[2] The proposed joint venture, under the name USA

---

[1] This matter comes before the Court after it consolidated two cases for pretrial purposes (Dkt. #19), both of which arise from the same nucleus of operative facts: 4:23-cv-516 (the "516 Action") and 4:23-cv-465 (the "465 Action"). Both causes of action arise from a transaction of alleged unfair competition between FFWCT and USA Football (*See* Dkt. #1; 516 Action, Dkt. #1). The 516 Action was originally filed in Indiana state court on February 13, 2024 (516 Action, Dkt. #1). It was removed to the Southern District of Indiana and subsequently transferred to this Court on June 6, 2023 (516 Action, Dkt. #32). As discussed below, through the 516 Action, USA Football asserts claims against FFWCT and USA Flag for trademark infringement and unfair competition (516 Action, Dkt. #1). Separately, in the 465 Action, filed in this Court on May 22, 2023, FFWCT asserts causes of action against USA Football under the Lanham Act (Dkt. #1). The 465 Action is the lead case (Dkt. #19). Accordingly, the Court will cite to it by referencing its docket number. *See, e.g.*, (Dkt. #[ ]). The 516 Action, being consolidated with the 465 Action, will be cited as the "516 Action" with a corresponding docket number. *See, e.g.*, (516 Action, Dkt. # [ ]).

[2] Flag Football World Championship Tour LLC was an Indiana limited liability company that served as the predecessor entity to FFWCT, LLC (Dkt. #62 at pp. 3, 6).

Flag, sought to create "Flag Football's New Governing Body" (Dkt. #62 at p. 6). USA Football declined the proposal but entered into a two-year Confidentiality & Nondisclosure Agreement ("NDA") with Flag Football World Championship Tour to "evaluate potential business opportunities" (Dkt. #62-34). The relationship continued into 2018, when the parties executed a Consulting Services Agreement ("CSA") (Dkt. #62-35). The CSA provided that Flag Football World Championship Tour would assist USA Football with the creation and development of an adult flag football program (Dkt. #62-35 at pp. 7–9). Flag Football World Championship Tour agreed to assist USA Football in two endeavors at the end of the one-year consulting term (Dkt. #62-35 at pp. 7–9). First, Flag Football World Championship Tour agreed to assist USA Football in hosting a USA Football National Championship event upon request (Dkt. #62-35 at pp. 7–9). Second, it agreed to aid USA Football in developing and launching a campaign for its 2019 Men's & Women's National Team program (Dkt. #62-35 at pp. 7–9). Notably, the CSA contemplated the production of work product and intellectual property throughout the contract term (Dkt. #62-35 at ¶ 8). Under the CSA, "all right, title and interest in and to the Work Product . . . and all other intellectual property rights" would "vest with [USA Football] and remain the sole and exclusive property of [USA Football]" (Dkt. #62-35 at ¶ 8).

But after beginning their relationship as teammates, USA Football and Flag Football World Championship Tour would soon become opponents. On April 21, 2020—shortly after the CSA expired—Burnett filed an application to register the trademark USA FLAG (Application Serial Number 88880085) (Dkt. #62-36). The application indicated that Burnett first began using the USA FLAG mark "[a]t least as early as" May 4, 2019 (Dkt. #62-36 at p. 2). The description of services in the USA FLAG application is virtually identical to the description of services in a USA

Football mark that was registered on March 28, 2017 (516 Action, Dkt. #2-2 at p. 2). The only difference in the description is Burnett's addition of the word "flag":

| USA Football Registration No. 5,172,678 Services Description | USA FLAG Application No. 88880085 Services Description |
| --- | --- |
| Educational services, namely, conducting programs, classes, seminars, conferences, workshops and exhibitions, displays, and interactive exhibits on **football** in the field of player safety, concussion awareness and management, coaching education, proper equipment fitting, and proper techniques, and the distribution of printed materials in connection therewith in hardcopy or electronic format on the same topics; organizing, conducting and operating **football** tournaments; organizing and conducting athletic competitions in the nature of **football** games and exhibitions; entertainment services in the nature of **football** games and exhibitions; sports instruction services related to the game of **football**; sports training, development, and evaluation services related to the game of **football**. | Educational services, namely, conducting programs, classes, seminars, conferences, workshops and exhibitions, displays, and interactive exhibits on **flag football** in the field of player safety, concussion awareness and management, coaching education, proper equipment fitting, and proper techniques, and the distribution of printed materials in connection therewith in hardcopy or electronic format on the same topics; Organizing, conducting and operating **flag football** tournaments; Organizing and conducting athletic competitions in the nature of **flag football** games and exhibitions; Entertainment services in the nature of **flag football** games and exhibitions; Sports instruction services related to the game of **flag football**; Sports training, development, and evaluation services related to the game of **flag football**. |

(516 Action, Dkt. #2-2 at p. 20; Dkt. #62-36 at pp. 1–2).

After learning about the USA FLAG application, USA Football sent a cease-and-desist letter to Burnett and FFWCT on June 23, 2020 (516 Action, Dkt. #2-4). Burnett never responded. (Dkt. #62 at p. 8). USA Football also filed a Notice of Opposition under Opposition Proceeding No. 91267483 with the Trademark Trial and Appeal Board ("TTAB") (516 Action, Dkt. #2-5). The TTAB sustained USA Football's opposition, thereby blocking registration of Trademark Application Serial Number 88880085 (516 Action, Dkt. #2-7).

In a Hail Mary attempt to salvage the relationship, USA Football and FFWCT entered into a final agreement in March of 2021 under which FFWCT allowed USA Football to scout at

FFWCT events (Dkt. #62-39). Among other things, the agreement provided that "FFWCT and all affiliates would cease and refrain from use of the name/branding of and around 'USA FLAG' through the Initial Term," which was scheduled to expire on February 28, 2022 (Dkt. #62-39 at pp. 1–2). Just over a month after the expiration of the Initial Term, on April 17, 2022, USA Flag filed Trademark Application Serial Number 97367238 for the mark USA FLAG (Dkt. #62-40). The mark was to be used in connection with the "[a]rranging and conducting of sports events; [a]rranging and conducting youth sports programs in the field of **flag football**; [s]port camp services" (Dkt. #62-40 at p. 1) (emphasis in original).

On September 14, 2022, FFWCT officially announced its rebrand to USA Flag, starting January 1, 2023. Travis Burnett, *Flag Football World Championship Tour Rebrands in a Bid to Broaden Recognition of the Sport*, USA FLAG (Sept. 14, 2022), https://usaflag.org/flag-football-world-championship-tour-rebrands-in-a-bid-to-broaden-recognition-of-the-sport/. One week later, USA Football sent Burnett another cease-and-desist letter (516 Action, Dkt. #2-10). The letter demanded that FFWCT "cease and desist any and all actual and planned usage of USA FLAG," because USA Football viewed the use of the name USA FLAG as "likely to cause confusion among consumers as to the source of the goods and services provided by FFWCT" (516 Action, Dkt. #2-10 at pp. 1–2). FFWCT did not cease or desist its use of the name USA Flag. For more, in its October 3, 2022 response to USA Football's letter, FFWCT insisted that it does not view the USA FOOTBALL and USA FLAG marks as sufficiently similar to support USA Football's allegations (516 Action, Dkt. #2-11 at p. 3).

USA Football has brought claims against FFWCT and USA Flag for trademark infringement, unfair competition, and common law unfair competition and trademark

infringement (516 Action, Dkt. #1 at pp. 10–14). USA Football has brought claims against Burnett for contributory and vicarious trademark infringement and unfair competition (516 Action, Dkt. #1 at pp. 14–15). Finally, USA Football has brought claims against FFWCT, LLC, USA Flag, LLC, and Burnett (collectively, "Flag") for unjust enrichment, conversion, deception, and seeks treble damages and associated costs under the Indiana Crime Victim's Relief Act (516 Action, Dkt. #1 at pp. 15–18). On July 14, 2023, Flag answered, asserting twenty-one affirmative defenses and seven counterclaims (516 Action, Dkt. #40). On August 18, 2023, Flag amended its Answer to add an eighth counterclaim (516 Action, Dkt. #48). The amended counterclaim seeks a declaratory judgment asserting that the "USA FLAG and/or USA FLAG FOOTBALL [marks] are invalid and/or unenforceable (at least against Defendants)" (Dkt. #24 at ¶¶ 134–38).

On May 17, 2024, Plaintiff/Cross-Defendant USA Football filed its Motion for Summary Judgment (Dkt. #62). Through it, USA Football contends that it is entitled to summary judgment "on all of its claims," which include claims for trademark infringement, unfair competition, civil conversion under Indiana law, and vicarious liability (Dkt. #62 at pp. 1, 19–30). USA Football requests that the Court enter "summary judgment regarding USA Flag's liability only, with willfulness and damages to be proven at trial" (Dkt. #62 at p. 2 n.1).

On June 22, 2024, Plaintiff/Cross-Defendant Flag filed a Response (Dkt. #75). In its Response, Flag argues that "genuine issues of several material facts," as well as "a material legal issue" preclude the Court from granting USA Football summary judgment (Dkt. #75 at pp. 1–2). Namely, Flag asserts that whether Flag's use of the USA FLAG mark creates a likelihood of confusion with the USA Football marks constitutes a fact question (Dkt. #75 at pp. 17–27). And according to Flag, because USA Football's conversion and vicarious liability claims depend on the

success of the underlying trademark infringement claim, summary judgment is also improper on those claims (Dkt. #75 at pp. 27–28). Additionally, Flag raises twenty-four evidentiary objections to the evidence that USA Football submitted in support of its Motion for Summary Judgment (Dkt. #75 at pp. 4–6).

On June 29, 2024, USA Football filed a Reply in Support of its Motion for Summary Judgment (Dkt. #79). On July 5, 2024, Flag filed a Sur-Reply (Dkt. #85). For the most part, Flag's Sur-Reply repeats its argument that trademark infringement should not be decided on summary judgment and clarifies many of its objections to USA Football's summary judgment evidence (Dkt. #85). But in a passing footnote, for the first time, Flag submits that the Court lacks subject matter jurisdiction over USA Football's claim under Indiana's conversion statute (Dkt. #85 at p. 8 n.7).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

# ANALYSIS

## I.    Subject Matter Jurisdiction

The Court begins, as it must, with jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). For the first time since this case was transferred to this Court from the Southern District of Indiana more than a year ago, in a footnote, Flag submits that the Court lacks subject matter jurisdiction over USA Football's conversion claim arising under Indiana statute (Dkt. #85 at p. 8 n.7). But in July of 2023, in another pleading, Flag admitted "that this Court has subject matter jurisdiction over the asserted claims" (516 Action, Dkt. #40 at p. 2). Naturally, this passing suggestion draws the Court's attention. It would have been dispositive when this action was transferred to this Court, just as it would be dispositive today, if the Court did, in fact, lack jurisdiction. Rest assured, the Court has subject matter jurisdiction over the conversion claim.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). This case was brought to federal court pursuant to the Court's power to adjudicate cases "arising under the Constitution, laws, or treaties of the United States"—also known as the Court's "federal question" jurisdiction (516 Action, Dkt. #1 at ¶ 2) (citing 28 U.S.C. § 1331). To determine whether federal question jurisdiction exists, courts apply the "well-pleaded complaint" rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*; *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

When a court looks to the face of the plaintiff's well-pleaded complaint, one of two circumstances present a federal question establishing jurisdiction under § 1331. First, "[m]ost directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016); *see also Gunn*, 568 U.S. at 257 (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)) ("Most directly, a case arises under federal law when federal law creates the cause of action asserted."). Therefore, if the Court finds a federal cause of action on the face of the plaintiff's well-pleaded complaint, the Court may exercise federal question jurisdiction over that claim.

Second, even if the Court finds only state-created causes of action on the face of the plaintiff's well-pleaded complaint, "there is 'a special and small category of cases in which arising under jurisdiction still lies.'" *Manning*, 136 S. Ct. at 1569 (quoting *Gunn*, 568 U.S. at 258). To determine whether a case falls within this special and small category, courts ask "does [the] state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods,, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–14).

10

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Further, parties may raise objections to subject-matter jurisdiction at any time. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

Here, applying the well-pleaded complaint rule, it is clear that this action falls into the first category of cases over which the Court has subject matter jurisdiction. The face of USA Football's Complaint pleads two claims under the Lanham Act—specifically, 15 U.S.C. §§ 1114, 1125(a)—as well as claims arising under the laws of the State of Indiana (516 Action, Dkt. #1 at ¶ 2). USA Football's trademark claims are properly before the Court because federal courts have original jurisdiction over actions arising under the Lanham Act—a federal law. 28 U.S.C. § 1338; 15 U.S.C. § 1121. The question, therefore, is whether the Court may exercise jurisdiction over USA Football's state law claims. USA Football argues that the Court may exercise supplemental jurisdiction over its state law claims because they are "substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution" (516 Action, Dkt. #1 at ¶ 2). Under 28 U.S.C. § 1367,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

In other words, if the Court has subject matter jurisdiction over one claim, it has supplemental jurisdiction over all other claims that are part of the same case or controversy. *See* 28 U.S.C. § 1367.

The Court will exercise supplemental jurisdiction over USA Football's state law conversion claims because they "are so related" to USA Football's Lanham Act claims "that they form part of the same case or controversy." *See id.* In its Complaint, USA Football brings a claim for conversion under Section 35-43-4-3 of the Indiana Code. The Code provides that "[a] person who knowingly or intentionally exerts control over property of another person commits criminal conversion . . . ." *Id.* In essence, USA Football's conversion claim asserts that "[b]y engaging in . . . knowing, intentional, deliberate, willful, and malicious [trademark infringement], [Flag] ha[s] exerted unauthorized control over the USA Football Marks with the intent to deprive USA Football of their benefit" (516 Action, Dkt. #1 at ¶ 92). Indeed, USA Football's conversion claim is derivative of its trademark infringement claim. Accordingly, USA Football's conversion claim is sufficiently related to its Lanham Act claims such that the claims form "part of the same case or controversy." 28 U.S.C. § 1367. Thus, the Court will exercise supplemental jurisdiction over USA Football's conversion claim.

## II.    Summary Judgment Merits

Having resolved the looming jurisdictional question, the Court now addresses USA Football's Motion for Summary Judgment (Dkt. #62). As a threshold matter, in its Response, Flag raises twenty-four objections to the evidence that USA Football submitted in support of its Motion for Summary Judgment (Dkt. #75 at pp. 4–6). The Court does not rely on any of that evidence in making the determinations that follow. But for the avoidance of doubt, to the extent that the Court relied on any evidence in determining USA Football's Motion for Summary Judgment (Dkt. #62), Flag's evidentiary objections (Dkt. #75 at pp. 4–6) are overruled. *Cf. Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citations omitted) (noting that at the summary

judgment stage, the district court must consider all of the evidence in the record to determine whether there is a dispute as to any material fact and draw all reasonable inferences in the light most favorable to the nonmoving party); *see also Maurer v. Indep. Town*, 870 F.3d 380, 385 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form," but "need only be *capable* of being presented in a form that would be admissible in evidence.") (emphasis in original) (cleaned up).

Turning to the merits, USA Football insists that summary judgment on all of its claims "is necessary and appropriate to alleviate the ongoing confusion and damages resulting from USA Flag's willful infringement" (Dkt. #62 at p. 2). Specifically, USA Football claims an entitlement to summary judgment on: (1) its trademark infringement and unfair competition causes of action under the Lanham Act and at common law; (2) Travis Burnett's vicarious liability for Flag's alleged infringement; and (3) Flag's purported liability under Indiana's conversion statute (Dkt. #62 at pp. 17–30). Relatedly, in its Response, Flag avers that USA Football does not "own[] any common law trademarks applicable to flag football" (Dkt. #75 at pp. 6–7). Instead, Flag argues, the USA Football trademarks at issue in this case—identified by trademark registration numbers 3182472, 3,241,236, 5,172,678, and 4615961 (Dkt. #62 at pp. 4–6) (collectively, the "USA Football Marks")—relate only to "football" generally, but do not cover *flag* football (Dkt. #75 at pp. 6–8). The Court addresses the first three issues in turn and will assess Flag's related argument in conjunction with the first issue.

### A.    USA Football's Trademark Infringement and Unfair Competition Claims

The Court begins with USA Football's claims for trademark infringement and unfair competition under the Lanham Act and at common law (516 Action, Dkt. #1 at ¶¶ 42–64). To

prevail on its trademark infringement claim, USA Football must establish (1) ownership in a legally protectable mark, and (2) infringement by demonstrating a likelihood of confusion. *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). The bulk of USA Football's analysis is dedicated to the second prong, likelihood of confusion (Dkt. #62 at pp. 19–27). But the Court cannot evaluate the second prong in the analysis without first resolving "the threshold requirement that [USA Football] must possess a protect[a]ble mark, which must be satisfied before infringement can be actionable." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (internal citations omitted). USA Football submits that it has carried its burden to establish the protectability of the USA Football Marks (Dkt. #62 at pp. 19–20). USA Football is correct.

### 1.    Protectability of the USA Football Marks

Section 7 of the Lanham Act—codified at 15 U.S.C. § 1057—provides:

> [a] certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

Accordingly, USA Football claims that its registrations warrant summary judgment on the issue of the protectability of the USA Football Marks (Dkt. #62 at pp. 19–20). But "[t]his presumption of validity may be rebutted by establishing that the mark is not inherently distinctive." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (citing *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979)). In its Response, Flag attempts to do just that by introducing fact issues

regarding the distinctiveness (or lack thereof) of the USA Football Marks (Dkt. #75 at pp. 17–21). The Court is unpersuaded.

Flag's challenge to the distinctiveness of the USA Football Marks falls flat because that argument is better handled under the likelihood of confusion analysis. While § 1057 creates a rebuttable presumption of validity and protectability, the ability to rebut that presumption disappears when the mark achieves incontestable status. *See* 15 U.S.C. § 1065. A mark becomes incontestable if it has been registered and used in commerce for more than five years. *Id.*; *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 471 (5th Cir. 2021). After becoming incontestable, the mark's federal registration "constitutes *conclusive* evidence of its validity, subject only to the defenses enumerated in section 1115 of the Lanham Act . . . ." *Perry*, 994 F.3d at 471 (emphasis in original). Thus, if the USA Football Marks are incontestable, they are "protected from a challenge by a presumption of validity." *Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 n.6 (5th Cir. 1990) (citing *Park 'N Fly v. Dollar Park and Fly*, 469 U.S. 189, 198–99 (1985)). Hence, Flag's only avenue to challenge the protectability of the USA Football Marks is to raise one of the defenses enumerated in 15 U.S.C. § 1115. At this juncture, Flag has not presented evidence of any of the nine enumerated defenses (*See* Dkt. #75; Dkt. #85). Instead, Flag challenges the distinctiveness of the USA Football Marks in an effort to minimize their strength, while also conceding that the marks are incontestable (Dkt. #75 at pp. 19, 21). But the strength of a mark is measured under the second prong of the analysis: likelihood of confusion. *See Am. Rice, Inc.*, 518 F.3d at 329. Thus, the Court need not address that argument here. The Court is satisfied that the USA Football Marks are incontestable and, therefore, USA Football has

established ownership of a legally protectable mark as a matter of law, subject to the defenses set forth in 28 U.S.C. § 1115.

Having determined that the marks are incontestable, the Court turns to Flag's counterclaims.[3] Flag's First Amended Counterclaim seeks a declaratory judgment on the invalidity of USA Football's asserted marks (516 Action, Dkt. #48). According to Flag, USA Football's marks are "invalid and/or unenforceable . . . such that liability cannot be based on any of the asserted marks" (516 Action, Dkt. #48). But once a mark becomes incontestable, "the registration shall be conclusive evidence of the validity of the registered mark" subject to certain defenses. 15 U.S.C. § 1115. While Flag's initial position appeared to raise some of the defenses enumerated in 15 U.S.C. § 1115, at the summary judgment stage, Flag appears to have abandoned those arguments (516 Action, Dkt. #40) (raising affirmative defenses for fraud, laches, estoppel, and acquiescence). In fact, USA Football moved for summary judgment on that issue (Dkt. #62 at pp. 27–28). Having successfully carried its burden to establish the incontestability of the USA Football Marks, the summary judgment burden shifted to Flag to present evidence and identify a genuine dispute of material fact on one of its § 1115 defenses. *See Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). Flag failed to do so (*See* Dkt. #75). Indeed, Flag appears to have wholly ignored USA Football's argument on that issue (*See* Dkt. #75). What's more, Flag concedes that the USA Football Marks "are now incontestable," without pointing the Court to any evidence of its asserted

---

[3] Although USA Football did not list Flag's counterclaims in its Statement of Issues, in the body of its summary judgment argument, USA Football "requests the Court grant summary judgment in its favor on Count I of USA Flag's Counterclaim" (Dkt. #62 at p. 28). Because Count I of Flag's First Amended Counterclaim requests a declaratory judgment of trademark invalidity and/or unenforceability (516 Action, Dkt. #48), which is inextricably intertwined with the question of the mark's protectability, the Court must address this argument under the first prong of the trademark infringement analysis.

affirmative defenses (Dkt. #75 at p. 19). Consequently, the Court will grant USA Football's Motion for Summary Judgment on Flag's counterclaim.

### 2.    Likelihood of Confusion

Next, the Court must analyze the second element in USA Football's trademark infringement claim: likelihood of confusion. *See Smack Apparel Co.*, 550 F.3d at 474 (citing *Am. Rice, Inc.*, 518 F.3d at 329). Flag treats as a threshold issue their position that their marks have not caused confusion in the marketplace because "football" and "flag football" are two separate and distinct activities (Dkt. #75 at pp. 6–8). According to Flag, the USA Football Marks—or "Tackle Marks," as Flag defines them—only cover the former, not the latter (Dkt. #75 at pp. 6–8).[4] Even Flag's naming of these marks as "Tackle Marks" is a misnomer that demonstrates its confusion in the analysis the Court now undertakes. Flag's position is this: because the services in the USA Football Marks relate to "football," but do not describe the *type* of football covered by the registrations, they apply *only* to tackle football (Dkt. #75 at p. 7). Hence, Flag's naming of the Marks as "Tackle Marks." But that is not the standard.

As the Court's sister court in the Northern District observed, "[t]rademark protection is not limited to the goods and services specified in the registration but extends to any goods or services which are likely to cause confusion in the market." *Source, Inc. v. SourceOne, Inc.*, No. CIV.A.3:05-CV-1414-G, 2006 WL 2381594, at *4 (N.D. Tex. Aug. 16, 2006) (citing *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir. 1982)). That view aligns with binding Fifth Circuit precedent. *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 623 (5th Cir. 1963) ("The remedies

---

[4] Ironically, in its Complaint in the 465 Action, it seems to the Court that Flag acknowledges that the term "football" might encompass "flag football." (Dkt. #1 at ¶ 34) ("USA Football is not the national governing body for football, *including flag football*, in the United States.") (emphasis added).

of an owner of a registered trade-mark . . . are not limited to the goods specified in the [registration] but extend to any goods on which the use of an infringing mark is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods.") (cleaned up). Instead, a factors analysis drives the likelihood of confusion inquiry. *Am. Rice, Inc.*, 518 F.3d 329.

Thus, Flag's analysis is not grounded in law. Although the law does not require a court to perform a likelihood of confusion analysis based on linguistic interpretation, nonetheless, the Court is drawn to the novelty of Flag's position because it is a non-starter. The Court notes that the most reasonable construction of "football" includes, as a sub-category, "flag football." But the Court's view of that issue is not the standard on summary judgment. It is the jury's province to define the contours of the terms "football" and "flag football" in an effort to determine whether the use of the term "football" in the marks creates a likelihood of confusion in the marketplace. Thus, Flag's threshold position does not obviate the need for the Court to continue to the factors. The factors control in the Fifth Circuit. *Am. Rice, Inc.*, 518 F.3d 329. So too, the factors guide the Court here.

To determine whether a likelihood of confusion exists, the Fifth Circuit weighs eight factors (sometimes referred to as "the digits of confusion"): (1) the strength of the plaintiff's mark; (2) the similarity of design between the marks; (3) the similarity of the products; (4) the identity of retail outlets and purchasers; (5) the similarity of design between the marks; (6) the defendant's intent; (7) actual confusion; and (8) the degree of care exercised by potential purchasers. *Am. Rice, Inc.*, 518 F.3d 329 (quoting *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)). No single factor is dispositive on the likelihood of confusion in a trademark infringement claim. *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985). "[I]ndeed, a finding of likelihood of confusion need not be supported by even a majority of the . . . factors." *Id.*

USA Football argues that these factors "overwhelmingly weigh in favor" of granting summary judgment for USA Football (Dkt. #62 at p. 27). After applying the factors to the summary judgment evidence, the Court disagrees. After all, "[l]ikelihood of confusion is a question of fact" that should be tried to the jury. *Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, 668 F. Supp. 3d 614, 648 (E.D. Tex. 2023) (internal citations omitted), *rev'd on other grounds by Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441 (5th Cir. 2024), *as revised* (Aug. 8, 2024). Therefore, if USA Football is unable to carry its summary judgment burden to establish that there is a conclusive likelihood of confusion as a matter of law, the issue should be put to the jury. Here, USA Football has not carried that burden. Accordingly, a jury must answer this question.

The Court is not convinced that USA Football has met its burden to demonstrate that there is no material fact issue on this prong that would entitle USA Football to judgment as a matter of law on its trademark infringement case.

### B.    Vicarious Liability

The Court now turns to USA Football's claim that it is entitled to summary judgment on Travis Burnett's alleged vicarious liability (Dkt. #62 at pp. 28–29). According to USA Football, Travis Burnett is vicariously liable for Flag's purported infringement as the "mover and shaker behind FFWCT and USA Flag" (Dkt. #62 at p. 29). The Court need not entertain USA Football's argument at this preliminary stage. Indeed, the viability of USA Football's claim for "contributory and vicarious trademark infringement and unfair competition against Mr. Burnett" is, of course, contingent upon a finding that Flag infringed upon the USA Football Marks (516 Action, Dkt. #1 at ¶¶ 76–87). Because the Court has determined that USA Football has not met its summary judgment

burden on likelihood of confusion, its request that the Court grant summary judgment on its vicarious liability claim must also fail.

### C.    Conversion

Finally, USA Football's conversion claim. At the summary judgment stage, the Court views this claim as possessing the same fatal flaw as USA Football's vicarious liability claim—it presupposes Flag's liability for infringement on the USA Football Marks. USA Football tacitly concedes as much in its Motion for Summary Judgment (Dkt. #62 at p. 30) ("[A] finding of liability against Defendants for trademark infringement necessarily supports a finding of conversion under its Indiana statute claim"). Because the Court has declined to make that finding at this stage, it must likewise deny USA Football's Motion for Summary Judgment on its conversion claim.

### CONCLUSION

It is therefore **ORDERED** that USA Football Inc.'s Motion for Summary Judgment (Dkt. #62) is hereby **GRANTED in part** and **DENIED in part**.

The Court **GRANTS** USA Football's Motion for Summary Judgment to the first prong of USA Football's trademark infringement claim. Namely, the Court **GRANTS** USA Football's Motion for Summary Judgment and concludes that there is no genuine dispute of material fact as to whether USA Football owns a legally protectable mark. The Court **DENIES** USA Football's Motion for Summary Judgment on the second prong of USA Football's trademark infringement claim—likelihood of confusion. There is a genuine dispute of material fact as to that prong.

The Court **GRANTS** USA Football's Motion for Summary Judgment on Count I of Flag's First Amended Counterclaim (516 Action, Dkt. #48), which asserts that USA Football does not have a valid or enforceable mark.

The Court **DENIES** USA Football's Motion for Summary Judgment on its vicarious liability claim because a fact issue exists on the issue of infringement, a prerequisite to its vicarious liability claim.

The Court **DENIES** USA Football's Motion for Summary Judgment on its conversion claim because a fact issue exists on the issue of infringement, a prerequisite to its conversion claim.

**IT IS SO ORDERED.**

**SIGNED this 3rd day of January, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE